IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GABRIEL ROSA-DIAZ,      )<br>    **Plaintiff**      )<br>     )<br>**vs.**      )<br>     )<br>**M. OVERMYER, et al,**      )<br>    **Defendants.**      ) | **C.A.No. 16-155Erie**<br>**District Judge Gibson**<br>**Magistrate Judge Baxter** |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.    RECOMMENDATION

It is hereby recommended that the motion to dismiss [ECF No. 59] should be granted in

part and denied in part, as follows:

- Granted as to Overmyer, Mongelluzzo, and Varner based on Plaintiff's failure
  to sufficiently allege their personal involvement in any constitutional
  violation. The Clerk should be directed to terminate these three Defendants
  from the docket;

- Denied as to the access to courts claim; and

- Granted as to the due process claim based on the loss of and damage to
  Plaintiff's personal property.

## II.    REPORT

### A.  Procedural History

Plaintiff, acting *pro se*, initiated the instant civil action on June 21, 2016. In his original

complaint, Plaintiff named seventeen individual Defendants and set forth six separate factual

scenarios which based his legal claims. On November 14, 2016, Plaintiff filed an Amended

Complaint adding twenty-six additional Defendants to the caption and expanding the number of

factual scenarios to twenty-six. Large portions of the Amended Complaint were later severed by this Court, limiting this action to the factual allegations and legal claims against current Defendants Friedline, Schlemmer, Heffernan, Siegel, Mongelluzzo, Overmyer, and Varner. ECF No. 42; ECF No. 45.

Thereafter, Plaintiff was allowed to file a Second Amended Complaint, which remains the operative complaint in this action. ECF No. 58. Plaintiff alleges that in July 2014 after being transferred to SCI Forest, Defendants confiscated and later destroyed his personal property and legal materials related to a pending civil rights action thereby violating his constitutional rights.

In response, Defendants filed a motion to dismiss [ECF No. 58] and Plaintiff filed a brief in opposition [ECF No. 62]. This dispositive motion is fully briefed and is ripe for disposition by this Court.

### B.  Standards of Review

#### 1.  *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading

2

rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2. Motion to dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This

'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### C. Plaintiff's Allegations[1]

On July 1, 2014, Plaintiff was transferred into SCI Forest, where he was temporarily housed in the Restricted Housing Unit pending a review by the Program Review Committee. ECF No. 58, ¶ 13. On July 9, 2014, Plaintiff was handcuffed and escorted to the property room by Defendant Correctional Officer Friedline whereupon he found most of his legal papers were out of the brown manila envelopes in which Plaintiff kept them filed and organized. Id. at ¶¶ 14-

---

[1] Plaintiff makes broad legal claims of violations of the Fourth and Eighth Amendments, as well as his right to privacy, along with state law claims including negligence. Plaintiff's assertions in this regard are without merit. Even a liberal review of Plaintiff's complaint reveals one basic claim in this case – denial of the right of access to courts. The Court need not accept a *pro se* litigant's legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986).

15. Friedline then presented Plaintiff with a pre-written DC-153 Property Inventory Sheet on which Friedline had already cataloged all of Plaintiff's personal property and told Plaintiff to select what property Plaintiff wanted to retain in his RHU cell. Id. at ¶ 16. Plaintiff complains that Friedline's inventorying of his property outside of his presence was a violation of Department of Corrections Policy DC-ADM 815. Id. at ¶ 17. Plaintiff later filed a grievance (518224) relating to Friedline's actions. Id. at ¶ 24.

Plaintiff chose the papers he believed he needed in order to prosecute his pending civil rights case of Rosa-Diaz v. Dow and was then escorted back to his cell. Once back at his cell, Plaintiff's handcuffs were removed and he was able to go through those legal papers. Upon his review of the documents in the brown manila envelope, Plaintiff realized that Friedline had removed all the documents pertaining to the Dow litigation and substituted filings related to an old criminal case. Id. at ¶ 23.

Plaintiff sought to have an exchange of his legal materials by filing a request on July 15th advising that he had an impending court deadline. Id. at ¶ 27. Plaintiff's request was denied by Defendant Schlemmer who also read Plaintiff's legal documents. Id. at ¶¶ 28-29. When Plaintiff verbally complained to Schlemmer following that denial, Schlemmer told Plaintiff he was instructed to deny Plaintiff's request by Defendants Heffernan and Siegel. Id. at ¶ 31.

Plaintiff filed a grievance (519216) related to the actions of Schlemmer, Heffernan and Siegel. Id. at ¶ 52. The denial of the grievance, which Plaintiff claimed contained inaccuracies, was authored by Defendant Mongelluzzo. Id. at ¶ 56. Plaintiff claims that by denying the grievance and upholding the actions of Schlemmer, Heffernan, and Siegel, Defendant Mongelluzzo violated his right of access to the courts. Id. Plaintiff appealed Mongelluzzo's

decision to Horton and Overmyer who affirmed it, and then appealed that decision to Varner who upheld it. Id. at ¶¶ 62-69.

Upon his release from RHU in mid-August, Plaintiff was allowed to inspect all of his personal property whereupon he discovered his personal address book was missing from his property. Id. at ¶ 76. Plaintiff also discovered that all of his papers related to the Dow case were missing and that his radio had been vandalized. Id. Plaintiff filed a grievance (523973) regarding Defendant Friedline's alleged theft of the address book and legal papers and vandalism of his radio. Id. at ¶ 80. Defendant Mongelluzzo denied the grievance. Id. at ¶¶ 83-90. Overmyer upheld Mongelluzzo's response on appeal and Varner upheld the response on final review. Id. at ¶¶ 103-108.

Plaintiff alleges that Friedline intentionally threw Plaintiff's address book away in retaliation for Plaintiff's use of the court system and to prevent him from contacting his family and friends in Puerto Rico. Id. at ¶¶ 92- 95.


### D.  Personal Involvement of Defendants

The Commonwealth argues that several Defendants (excluding Friedline and Schlemmer) should be dismissed from this action because Plaintiff has failed to allege facts sufficient to support their personal involvement.  This Court agrees in part.

To establish a § 1983 claim, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995); Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. It is well-settled that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional

right. See Gould v. Wetzel, 2013 WL 5697866, at *2 (3d Cir. Oct.21, 2013) citing Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011). This means that the defendant must have played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Oliver v. Beard, 358 Fed.App'x 297, 300 (3d Cir. 2009); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." Chinchello, 805 F.2d at 133; Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990) cert. denied, 501 U.S. 1218 (1991). Section 1983 liability cannot be predicated solely on the theory of *respondeat superior.* Rizzo v. Goode, 423 U.S. 362 (1976). See also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's actions); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-95 (3d Cir. 1997) (holding that § 1983 plaintiff is required to show that supervisor personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

In the context of a defendant who is alleged to have performed in a supervisory role, courts have identified two general instances in which either the conduct of that supervisor-defendant or the policies/procedures of that supervisor-defendant may amount to personal involvement and thereby warrant a finding of individual, supervisory liability for a constitutional

7

tort: First, supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Second, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id. quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989).

Plaintiff has sufficiently pled the personal involvement of Defendants Heffernan and Siegel for their part in directing the denial of Plaintiff's request for an exchange of legal materials. See ECF No. 58, at ¶ 31. As to Defendants Overmyer, Mongelluzzo, and Varner, Plaintiff's allegations against these individuals are all based on their participation in the grievance misconduct review process. The denial of Plaintiff's grievances and/or misconducts does not, in itself, satisfy the requisite "personal involvement" requirement. Mincy v. Chmielsewski, 508 Fed.App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); Rogers v. United States, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official."). Overmyer, Mongelluzzo and Varner should be dismissed from this action. To the extent that Plaintiff alleges that all of these Defendants

8

somehow acted in concert to deny his grievances, such a claim does not support the necessary personal involvement for § 1983 liability.[2]

Accordingly, the motion to dismiss should be granted as to Overmyer, Mongelluzzo, and Varner.

### E. Access to Courts

Defendants move to dismiss this claim arguing that Plaintiff has failed to state an access to courts claim.

Prisoners have a constitutional right to "adequate, effective, and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817 (1977).[3] Inmates can only proceed on access to courts claims in two types of cases, direct or indirect challenges to their criminal sentences and civil rights actions relating to their conditions of confinement. Lewis v. Casey, 518 U.S. 343, 355 (1996) (the "[i]mpairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."). In so-called backward-looking access cases "where prisoners assert that defendants' actions have inhibited their

---

[2] Furthermore, for the same reasons, none of Plaintiff's allegations are sufficient to state a civil conspiracy claim under § 1983. See Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 185 (3d Cir. 2009) ("[A]llegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."); Wardell v. City of Erie, 2015 WL 6134014, at * 11 (W.D. Pa. Oct. 16, 2015) quoting Loftus v. Southeastern Pa. Transp. Auth., 843 F.Supp. 981, 987 (E.D. Pa. 1994) ("while the pleading standard under Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements.").

[3] The right of access to courts may arise in the context of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection Clause. See Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002).

opportunity to present a past legal claim," the Third Circuit has succinctly stated the elements a

plaintiff must plead:

> "[T]hey must show (1) that they suffered an 'actual injury' in that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."

Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) explaining the standard set forth in

Christopher v. Harbury, 536 U.S. 403, 415 (2002). Furthermore, the complaint must plead

sufficient facts to describe the underlying arguable claim "well enough to show that it is 'more

than mere hope'" and it must describe the lost remedy.  Monroe, 536 F.3d at 205.

Here, Plaintiff alleges that the loss of his legal property, beginning in July 2014 upon his

transfer to SCI Forest, resulted in actual injury in that several Defendants were dismissed from

his civil rights action Rosa-Diaz v. Dow, C.A. No. 3:14-cv-05, based on his failure to allege their

personal involvement.[4] In assessing Plaintiff's alleged lost claims, the Court takes judicial notice

of the docket in the action identified by Plaintiff to determine whether any underlying claim has

---

[4] As his injury, Plaintiff pleads:

> Plaintiff had suffered irreparable injury in a court of law by the denial of Defendant CO Schlemmer in not allowing Plaintiff access to Plaintiff legal papers, as Plaintiff was unable to obtain help from other prisoners with knowledge of the law to help Plaintiff prepare meaningful papers to the court, which resulted in Plaintiff not being able to properly amend his active civil complaint "Gabriel Rosa Diaz v. Sgt. Dow, et al, No. 3:14-cv-00005" which result in the dismissal of Defendants Robert Reed (H.Ex.), Kenneth Cameron (F.M.) Adam Beck (accountant), Lewis (Chief Hearing Examiner); and John Wetzel (Secretary of Department of Corrections); which result in the dismissal of Plaintiff claims of violation to 'due process and deliberate indifference' protected by the Eighth and Fourteenth Amendments to the U.S. Constitution, and because those claims have been dismissed and forever lost, now Plaintiff suffer irreparable harm in court to which Plaintiff is being forced to pay outstanding medical bills of $31,414.30 to the Department of Corrections officials."

ECF No. 58, ¶ 35.

been lost or otherwise impeded, and to determine whether the claim asserted is frivolous. See, e.g., Keeling v. Barrager, 2014 WL 1338077, at *12 (M.D.Pa. Apr. 3, 2014), aff'd, 666 Fed.App'x 153 (3d Cir. 2016).[5]

In their motion to dismiss, Defendants argue that by examining the docket for the procedural history of the underlying case, it is evident that Plaintiff's access to courts was not denied as, during the relevant time frame, he was able to file a brief in opposition to a motion to dismiss, as well as an amended complaint. ECF No. 60, pages 3-5.[6] Examining the docket for the procedural history alone is not enough here. Defendants' view is both an oversimplification of Plaintiff's claim and of what it means to have access to courts.

Plaintiff's claim is not simply limited to his inability to access the legal materials during July 2014. Plaintiff claims he was denied access 1) when he was unable to access his legal materials while he was in RHU and 2) later after his release from RHU, when his legal materials

---

[5] In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits, and matters of public record. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). An exception to this general rule is "undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). A court may consider "items subject to judicial notice," without converting the motion to dismiss into one for summary judgment. Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) quoting 5B Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2004).

[6] Defendants argue: "Acknowledging the simple chronology of when Plaintiff filed his opposition in the past legal action and when the alleged wrongs purported occurred dictates that Plaintiff did not lose a chance to pursue any claim or oppose any attack asserted in the motion to dismiss filed in the other action. […] The litigation history establishes that Plaintiff filed his Amended Complaint in a timely manner in accordance with an extension granted by the Court and Plaintiff filed a timely opposition to the motion to dismiss. No actions by Defendants that may have occurred in July 2014 caused Plaintiff to lose a chance to pursue his claim in the past legal action." ECF No. 60, pages 4-5.

had been destroyed. Defendants' argument in support of their motion to dismiss limits itself to the first.

Even looking only at the limited issue of whether Plaintiff was denied access during his RHU placement in July 2014, Defendants' argument misses the mark. A thorough review of the docket reveals that Plaintiff filed his opposition brief before his legal materials were confiscated and before he received notice from the court that he could amend his complaint. See Dow, at ECF No. 26-1 (envelope mailed from SCI Huntingdon). The docket also reflects that after Plaintiff was transferred (and was without his legal materials), he sought an extension of time in which to file an amended complaint[7] and he later filed a short "amendment" which was no amendment at all[8]. During this time period, Plaintiff's filings repeatedly complain that he was

---

[7] By motion filed July 10, 2014, Plaintiff sought an extension of time in which to file an amended complaint explaining that he had recently been transferred to SCI Forest and that he was not permitted to have his legal papers. Dow, at ECF No. 29. Plaintiff asked that the judge not decide his case yet and further explained that he had filed the opposition brief in haste because "An inmate told me that I haded [sic] to do that righ[t] away or the judge was going to dissmiss [sic] the complaint." And that he did it quickly before he got the "court order from the judge telling me that I could amend the complain[t]." Id. Plaintiff stated: "Even though I not know how to amend it, I can (maybe) find help to amend it. So please give me the time to the twenty-something of this month. If you not get a beter [sic] amended complaint by then or a beter [sic] 'Brief in Opposition to motion to dismiss,' then rule on it for I cannot do nothing beter [SCI] for myself." Id. (underlining in original).

[8] On August 15, Plaintiff submitted a filing captioned as "Amendments to Original Complaint." Dow, at ECF No. 30. The document reads, in its entirety:

> Your Honor,
>
> This new prison I am is refusing to give me my legal papers and thus no inmate whom is willing to help me can help me.
>
> A prisoner here told me to write you and explain this to you. He also told me not to panic the District Attorney all they do is lie.
>
> This same inmate told me to ask you to make the following amendments to my original complaint: To erase that all the named Defendants haded [sic] 'contemperaneious [sic]

without his legal materials and was at a disadvantage in prosecuting his case. Even later, following the issuance of a Report and Recommendation recommending that several Defendants be dismissed due to Plaintiff's failure to sufficiently allege their personal involvement, Plaintiff filed Objections again complaining that he did not have his legal materials.[9] While Plaintiff technically "accessed" the courts during this timeframe, he did not have meaningful access to the courts because he was deprived of his legal documents.

It is up to Plaintiff to prove the elements of his access claim at trial (or in the face of a motion for summary judgment), but here, his allegations are sufficient to defeat a motion to dismiss.

### F. Destruction of Personal Property

The analysis of a claim stemming for the deprivation of a property interest focuses on the existence of a post-deprivation remedy. An unauthorized, intentional deprivation of property by government employees does not violate the Due Process Clause so long as there is a

---

knowledge' and to please enter that all of the Defendants haded [sic] 'Actual knowledge' were they all knew without a doubt what they were doing.

I was told to explain to you that I do not know how to number the paragraphs for the changes of words because the CO's refuse to give me my legal paperwork.

Please rule on the original complaint as filed with the amended change of words, as all the Defendants did had Actual Knowledge.

Dow, at ECF No. 30.

[9] In his Objections, Plaintiff stated that he could not state an argument "because SCI Forest correctional staff have stolen Plaintiff's complaint and all related documents in their attempt to stop me from pursuing this civil action. […] Plaintiff is just attempting [sic] to file this appeal by reading the Report and Recommendation and by what he can remember of the event that happened by recollection [sic] of his mind." Dow, at ECF No. 36.

"meaningful post-deprivation remedy" available to the plaintiff. Hudson v. Palmer, 468 U.S. 517, 533 (1984). The prison grievance system has been deemed an adequate post-deprivation remedy. Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 421 (3d Cir. 2000).

This Court takes judicial notice of the fact that the Pennsylvania Department of Corrections has a grievance system in place. Because Plaintiff had adequate post-deprivation remedies available to him to contest the loss of (and damage to) his personal property, his due process claim fails as a matter of law and should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion to dismiss [ECF No. 59] should be granted in part and denied in part, as follows:

- Granted as to Overmyer, Mongelluzzo, and Varner based on Plaintiff's failure to sufficiently allege their personal involvement in any constitutional violation. The Clerk should be directed to terminate these three Defendants from the docket;

- Denied as to the access to courts claim; and

- Granted as to the due process claim based on the loss of and damage to Plaintiff's personal property.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation.  Any party opposing the Objections shall have fourteen (14) days from the date of service of the Objections to respond thereto.  See Fed.R.Civ.P. 72(b)(2).  Extensions of time will not be granted.  Failure to file timely

14

objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge


Dated:  August 14, 2018